[No. 2395.  Decided March 27, 1897.]

WEST SEATTLE LAND AND IMPROVEMENT COMPANY, *Respondent*, v. A. L. HERREN *et ux.*, *Appellants*.

AMENDMENT OF PLEADING — FALSE REPRESENTATIONS — WHEN ACTIONABLE.

The refusal of the trial court to allow an amendment to the answer in a cause is not ground of reversal, in the absence of a showing of abuse of the discretion lodged in the court in the matter of amendments.

Representations made by the seller of real estate to induce a purchaser to buy, although false, are not ground for rescission of the contract of purchase, when there was no fiduciary relation existing between the parties, and when the truth or falsity of the representations could have been readily ascertained by the purchaser by investigation on his part.

The representations of a vendor of lots in a new town site as to what improvements the owners were going to make in connection therewith, fall under the category of expressions of opinion, and not of representations of material facts.

Appeal from Superior Court, King County.—Hon.
J. W. LANGLEY, Judge.   Affirmed.

*Byers & Byers*, for appellants :

A purchaser has a right to rely upon representations
of the seller as to facts not within the purchaser's
knowledge.   *Bank v. Hiatt*, 58 Cal. 234.   The repre-
sentation of the actual cost of property.is the repre-
sentation of a fact that is actionable.   *Teachout v. Van-
Hoesen*, 14 Am. St. Rep. 206 (40 N. W. 96) ; *Sand-
ford v. Hardy*, 23 Wend. 260.   It was not necessary
that the false representations should constitute the
sole inducement to the defendants to make the pur-
chase and execute the mortgage.   It is enough, if
without the false representations the contract would
not have been made.   *Mudsill Mining Co. v. Watrous*,
61 Fed. 163; *Matthews v. Bliss*, 22 Pick. 48; Cooley,
Torts (2d ed.) p. 587; *Champlin v. Laytin*, 18 Wend.
407 (31 Am. Dec. 382).

If we have shown that the representations have
been made and that they were false, and either that
Ewing knew them to be false or that he had no
reasonable ground for believing them to be true, the
law will impute to him a fraudulent intent, and we
have sustained our defense.   3 Wait, Actions and De-
fenses, pp. 438, 439; *Collins v. Denison*, 12 Metc. 549;
*In re Hays' Estate*, 28 Atl. 158; *Leicester Piano Co. v.
Front Royal, etc., Imp. Co.*, 55 Fed. 190; *Kitchen v.
Rayburn*, 19 Wall. 254.

*Struve, Allen, Hughes & McMicken*, for respondent:

A promise or expression of intention is not a rep-
resentation, and the person making it cannot be held
responsible as for a deceit, even though he had no in-
tention of living up to it.   *Gallager v. Brunel*, 6 Cow.

346; *Gage v. Lewis,* 68 Ill. 604; *Lexow v. Julian,* 21 Hun, 577; *Long v. Woodman,* 58 Me. 49; *Burt v. Bowles,* 69 Ind. 1; *Watkins v. West Wytheville Land & Imp. Co.,* 22 S. E. 554; *Day v. Fort Scott, etc., Imp. Co.,* 38 N. E. 567; *Saunders v. McClintock,* 46 Mo. App. 216; *Warner v. Benjamin,* 62 N. W. 179.

The opinion of the court was delivered by

DUNBAR, J.—This is an action brought by respondent against appellants to foreclose a purchase money mortgage. The defendants (appellants) set up as a defense and by way of counterclaim the fraud of the plaintiff in selling them the property and inducing them to execute the mortgage on which the suit is brought. The false and fraudulent representations by which they were induced to purchase the said premises and execute the mortgage, as set up in defendants' answer, are briefly as follows: That Thomas Ewing, president and general manager of the plaintiff, represented to the defendants that the plaintiff would grade the streets without cost to defendants; that the plaintiff then owned a thirty thousand dollar ferry boat which was being repaired in San Francisco and would soon be placed on the route between Seattle and West Seattle (the property in question being located in West Seattle), and that the residents of West Seattle would have a fifteen minute service on the ferry boat between West Seattle and Seattle during certain hours of the day; that the plaintiff owned the railroad then being constructed between Seattle and West Seattle, and that the residents of the latter place would be sold tickets good on ferry boat and railroad train alike; that the plaintiff had made .arrangements for, and would in a short time erect and put in operation, a gas and electric light plant

and would furnish gas and electricity to the residents
of West Seattle; that the house built on the lots pur-
chased by the defendants had cost the plaintiff more
than $6,000; that plaintiff had selected a site for, and
would soon erect thereon, a large hotel costing $500,-
000; that the plaintiff had donated a site for a Presby-
terian church and that a church would very soon be
built thereon; that these representations had been re-
lied upon by the defendants, and that they had not
been fulfilled by the plaintiff.   This sale was made
and the mortgage and notes executed during the first
part of August, 1890.   The consideration was $8,000,
a portion of which was paid down and the balance
was paid afterwards, to wit: November 14, 1891, $1,-
000; November 24, 1891, $1,000; February 15, 1892,
$200; April 12, 1893, $211.30.

So far as the contention of appellants is concerned,
that the court erred in refusing to allow an amend-
ment to the answer, this was a motion addressed to
the discretion of the trial court, and under the cir-
cumstances of the case we are not able to say that
that discretion was abused.   Nor do we think the
court committed error in the admission or rejection
of testimony.   We think, under the rule announced
in *Washington Central Improvement Co. v. Newlands*,
11 Wash. 212 (39 Pac. 366), there was no testimony
introduced in this case sufficient to have put the
plaintiff upon its reply, if indeed the answer was not
legally subject to a demurrer.

In the case above referred to the respondent brought
suit against the appellant on a contract for the pur-
chase by him of certain lots and upon his notes given
for the purchase price.   The appellant, as in the case
at bar, admitted the making of the notes and set up
an affirmative defense, alleging deceit and false repre-

sentations. The essential allegations of the affirmative defense were as follows :   " The note and contract " hereinabove described were obtained of this defend- " ant by plaintiff by grossly reckless, erroneous, will- " ful and fraudulent representations on plaintiff's " part, in this, that at the time when defendant was " induced to contract for the purchase of the lots above " described and signed the note, plaintiff represented " to him, with the intent so to induce him, that " plaintiff and others were building and were causing " to be built on lots within sixty feet of those which " defendant was to buy a substantial brick hotel to " cost not less than $9,000; that this hotel was to be " finished forthwith; that building contracts had been " made for its erection, and that the work was already " under way; that, relying upon these representations, " defendant entered into the contract," etc.; that the representations were reckless and erroneous, and that the building had never been erected.  A demurrer was interposed to this affirmative defense, which was sustained by the court.  This court held that the demurrer was rightly sustained; that there was no fiduciary relation between the seller and the buyer alleged, and that it was not alleged that the buyer was in such a position that he was unable to make an investigation concerning the truth or falsity of the alleged representations.

And so in this case, it does not appear that any fiduciary relation existed between the plaintiff and the defendants, or that the defendants were overreached in any way or manner.  It does affirmatively appear, however, from the defendants' own testimony, that Herren, who made the contract, was a man of intelligence, in the prime of manhood, having the possesion of all his faculties; that he was a business man, testify-

ing himself that he had been a merchant and trader all his life; that he bought this property for a residence, with the intention of entering upon the purchase and sale of agricultural land as a business.   The purchaser and the seller stood at arms' length on an equal footing, and if the representations alleged in the answer were made by Ewing, they were representations which, if deemed material by the purchaser, should have been inquired into.   But the testimony of the appellants shows that these expressions which were used by Ewing were merely expressions of enthusiastic opinion in relation to the growth and prosperity of West Seattle.

So far as the value of the house is concerned, the parties bought with their eyes open, after an examination of the house, and after two different views of the premises.   They went and looked over the premises one day in company with Ewing, and the next day, or next day thereafter, went again, when Mrs. Ewing testified that they obtained the keys for the purpose of again viewing the house.   There was no attempt on the part of Ewing to hide anything, or to prevent a full and complete examination of the property, including the house.   In fact, the defendants testified that they had been over the city examining other property and ascertaining the respective values of other pieces of property in different localities in the city.   And so with all the other representations made, it does not appear that it was not within the power of the defendants to ascertain the correctness of the alleged representations.   The testimony we have examined in detail, and while it appears probable that Ewing was an accomplished salesman, and that he presented a picture of the future prosperity of West Seattle in warm and glowing colors, there does not

appear any actual misrepresentation of the facts; and if contracts for the sale of real estate were to be abrogated for the reason that the seller had enthusiastically portrayed the property or represented its value, there would be no such thing as stability in contracts.

Outside of the facts that these representations in relation to the gas and electricity, the running of boats, railroads, etc., which are alleged to have been largely relied upon, are flatly contradicted by Ewing, it appears from the testimony of the defendants that they continued to make payments on this contract long after they were aware that these improvements were not made. This contract was entered into, as we have before remarked, in the first part of August, 1890, and the defendants at intervals made payments until nearly three years thereafter, or April 12, 1893, and not until two years later, or 1895, when this action was commenced, did they set up this plea of fraud in contracting the lands. It is claimed by the appellants that these payments were made with the understanding that the improvements were yet to be made; but, outside of the plain denial on the part of Ewing, the testimony of the defendants does not justify this conclusion. About as definite as any is the following testimony of the defendant, A. L. Herren, in relation to these continued promises at the time of these further payments:

"*Question:* Did he or did he not at any of those times state that those promises would be carried out in the future? *Answer:* I don't know that I can repeat the conversation as a conversation, but he frequently in conversations always assured me that the company was going to do what they had promised and make West Seattle the finest place on the coast—on the Sound country here, and they were going to have a large influx of people here, and so on, and they

would give us all they had promised and more too."

This strengthens the idea that it was a mere expression of opinion on the part of Ewing as to what the final standing of West Seattle would be, corroborating the testimony of Ewing to the effect that he told these defendants that these improvements would be made whenever there was a sufficient number of people in West Seattle to justify them. We have examined the testimony in this case in detail, and, without further citing from it, we are satisfied that the facts found by the court and the legal conclusions reached therefrom are sustained by the record.

The judgment will therefore be affirmed.

SCOTT, C. J., and ANDERS, GORDON and REAVIS, JJ., concur.