[No. 5157. Decided July 5, 1904.]

J. J. MULHOLLAND, *Respondent,* v. WASHINGTON MATCH COMPANY, *Appellant.*[1]

PROCESS—SUMMONS—WAIVER OF DEFECT BY APPEARANCE. A motion to quash the service of a summons for insufficiency in form is properly overruled, where defendant had already entered a full appearance in the action, and filed an answer to the complaint.

FRAUD—BY CORPORATION—RESCISSION OF SALE OF STOCK—DUTY OF PURCHASER TO INVESTIGATE REPRESENTATIONS—TRUTH NOT AT HAND. The purchaser of treasury stock from a corporation may rescind the sale for fraud where he relied upon false representations of the officers and promoters with regard to the ownership by the corporation of a device for manufacturing matches and the patents therefor, and a prospectus containing false representations as to the capacity of such machine, since the facts with

[1]Reported in 77 Pac. 497.

reference to the existence of the machine and the patents therefor were not at hand, and the representations involved a special skilled knowledge, concerning which the plaintiff was not under obligations to investigate for himself.

RESCISSION—FRAUD—LACHES—DILIGENCE IN BRINGING SUIT. A delay of eighteen months in bringing an action for rescission of a sale of stock in a corporation on the ground of fraud will not estop the plaintiff, where the complaint alleged that the action was commenced within a reasonable time after the discovery of the fraud, and the plaintiff testified that he believed the representations to be true until one month before the commencement of the action.

RESCISSION—SALE INDUCED BY FRAUD—ESTOPPEL—COLLATERAL SECURITY NOT AFFECTING FRAUD IN ORIGINAL CONTRACT. Where a purchase of treasury stock in a corporation was induced by fraud, the purchaser is not estopped to rescind the contract by the fact that afterwards certain other shares of stock were pledged as a guaranty, and other stock was put up as collateral, and that plaintiff had availed himself of the guaranty and collateral, since such guaranty and collateral do not affect the fraud in the original contract, or carry with it any estoppel.

Appeal from a judgment of the superior court for Pierce county, Snell, J., entered October 19, 1903, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, decreeing the rescission of a sale for fraud.    Affirmed.

*H. E. Foster,* for appellant.

*Jas. J. Anderson,* for respondent.

HADLEY, J.—The respondent, as the holder of stock in the appellant corporation, brought this suit to rescind the contract of purchase and sale by which he obtained the stock, and also to obtain judgment for the amount originally paid therefor.    The material allegations of the complaint are, that the capital stock of the corporation, as stated in its articles of incorporation, is the sum of $1,200,000, divided into 240,000 shares, of the par value

of $5 per share; that one Lucius T. Holes subscribed for 239,996 shares of the stock upon the organization of the company, and that four other persons, named as co-defendants with appellant herein, each taking one share, subscribed for the remaining four shares; that said persons became the incorporators, trustees, and officers of the corporation; that thereafter said Holes transferred to said corporation 108,000 shares of said capital stock, which was known as treasury stock, the same to be sold by the company, and the proceeds thereof to be placed in the treasury; that afterwards the said company and its officers issued and published a certain circular or prospectus, for the purpose of advertising the company and its stock, in which circular the names of said original stock subscribers were set forth as the promoters, incorporators, trustees and officers of the company, for the purpose of inducing persons who should read said prospectus to believe that the several matters and things therein set forth and represented were true; that in said circular said persons, for the purpose aforesaid, represented, that said Holes had invented a certain match machine, called the "Holes Match Machine," and that said invention or machine was then the property of said company; that said machine was capable of producing, and was producing, five times as much finished product in any given length of time as any other match machine, and at one-fifth the cost for labor; that the machine was capable of making, and was making, a complete match; that it would put the matches into the boxes, and would wrap the boxes into packages containing from one dozen to one gross of the boxes; that it would turn the packages out of the machine ready to ship, and, if desired, would print advertising matter on each and every match; that the machine had a capacity of 86,400,-

000 matches, or 4,000 gross of 150 matches in each box, for every ten hours operated; that said Holes was a practical match manufacturer, as well as the inventor of said machine; that said company had letters from "the trade" (meaning the dealers in matches), containing more orders for matches than the factory proposed to be constructed by the company could produce. A copy of the alleged circular is made a part of the complaint, and contains, among other things, substantially what is stated above as alleged by respondent.

It is further averred that the said officers and agents of said company caused to be exhibited to respondent a copy of a certain writing, purporting to be an assignment or bill of sale from said Holes to said company of a certain machine, therein represented to have been invented and perfected by said Holes for the purpose of manufacturing and boxing matches, and in which it was stated and represented that said Holes was the owner of the machine; that one of the machines described in the assignment was represented to be then in the city of Philadelphia, Pa., but that certain parts thereof were then in Seattle, Wash.; that said writing also contained certain other of the representations hereinbefore set forth, and was exhibited to respondent for the purpose, and with the intent, of inducing him to believe that said Holes had invented and perfected such a machine, and that said company was then the owner thereof; that it was also exhibited to him for the further purpose of inducing him to purchase shares of the capital stock of the said company; that at various times one Lanning, also a co-defendant, who is alleged to have been assistant manager of said company and its duly authorized agent, and also the said Holes, acting for themselves and for their co-defendants, including the appellant

company, repeated the representations hereinbefore recited, together with others of similar import; that said Lanning represented to respondent that he had actually seen the machine making matches; that all of said representations were made to respondent prior to the time that he purchased any stock in said company; that respondent, believing said statements and representations to be true, and relying upon them, did purchase from said corporation 250 shares of the so-called treasury stock, and paid therefor to the said company the sum of $250, and afterwards, further believing and relying upon said statements, he purchased an additional 150 shares of said stock, for which he paid to said company the further sum of $150; that said sums, aggregating $400, were received by said company and turned into the treasury of the company for its benefit; that the same is retained by the company, and no part thereof has been repaid to respondent.

It is further alleged that each and all of the said statements are, and were at the time they were made, wholly false; that said Holes never did invent or perfect any machine for the manufacture of matches; that there has at no time been any perfected machine known as the "Holes Match Machine;" and that the said corporation did not own such a machine. The truth of practically every representation hereinbefore set forth is negatived, and it is averred that their falsity was known to the company and its said officers and agents, at the time they were made. It is further alleged that, prior to the commencement of this action, and within a reasonable time after respondent ascertained that said representations were false, he tendered to said company the said 400 shares of stock, purchased as aforesaid, and demanded the repayment of said $400 paid for the stock; that the company

refused, and still refuses, to accept the return of the stock
or to repay the money; and that respondent now brings
the shares of stock, and deposits them with the clerk of
the court, to await the orders of the court in the premises.
The complaint prays judgment for $400, and that the
contract of purchase of the said 400 shares of stock be
rescinded.

The appellant was the only defendant that joined issue
upon the complaint, the other defendants not having been
served with summons. Appellant demurred to the com-
plaint, which was overruled, and after answer a trial was
had before the court without a jury, resulting in a judg-
ment according to the prayer of the complaint. The com-
pany has appealed from the judgment.

Appellant's first assignment of error is that the motion
to quash the summons and service was overruled. It is
asserted that the summons was insufficient in form, but
we are unable to appreciate the criticism, since every
essential statutory requirement seems to be contained in
the summons. It is unnecessary for us to examine the
record as to the service of the summons, since appellant
entered a full appearance in the action, as shown by res-
pondent's supplemental transcript. In such case no service
of summons was necessary. On September 12, 1903, a
full appearance for appellant was entered by demurrer
to the complaint, through J. W. A. Nichols, its attorney.
The same counsel also, on the 22d day of September, 1903,
served upon respondent's counsel an answer in the cause,
which was filed October 13, 1903. It is true that the
record brought here by appellant shows that counsel who
appears for appellant in this court did, on October 12,
1903, file a motion to quash the summons and service,
and stated therein that the appearance was limited to the

purposes of the motion only; but the motion was then of no effect, for the reason that appellant had, a month prior to that time, entered a full appearance through accredited counsel. The court did not err in denying the motion to quash.

It is next assigned that the complaint is wholly insufficient, upon its face, to authorize the court to make and enter any judgment, or to grant any relief. By reason of this assignment, we have set forth above at some length the more material averments of the complaint. It seems to be appellant's theory that respondent was dealing with it at arm's length. It is argued that, since no fiduciary relation existed, and since it is not alleged that respondent was overcome by cunning or artifice, by reason of being frail of body, or of weak and imbecile mind, caused by advanced age or disease, he does not show a ground for relief.

It cannot be the law that a person of ordinary faculties may never rely upon representations made to him, even though no fiduciary relation may exist. Each case must depend upon its own circumstances. Where the subject matter is at hand, and the truth easily ascertainable, this court has held that one must use his senses, and cannot afterwards be heard to say that he has been defrauded, if he neglects to avail himself of a present and reasonable opportunity to learn the truth. The above rule was applied in *Washington Central Imp. Co. v. Newlands,* 11 Wash. 212, 39 Pac. 366; *West Seattle Land & Imp. Co. v. Herren,* 16 Wash. 665, 48 Pac. 341; *Griffith v. Strand,* 19 Wash. 686, 54 Pac. 613; *Walsh v. Bushell,* 26 Wash. 576, 67 Pac. 216.

Under the circumstances detailed by the complaint, as hereinbefore set out, we think the rule of the above cases

does not apply here. The representations with regard to the ingenious device for manufacturing matches upon the proposed new plan, and upon such an extensive scale, involved a special, skilled knowledge of the mechanism itself. Even if respondent had been sufficiently skilled to analyze and pass upon the merits of the mechanism, or even if it had been his duty to cause it to be done by some one known to be skilled, yet, under the allegations of the complaint, the machine was not at hand, and did not in fact exist. The facts with reference to the existence of such a machine and the patent therefor, together with the ownership thereof by appellant, were peculiarly within the knowledge of appellant's officers and agents who made the representations. It even appears by the complaint that a paper purporting to be a transfer of such ownership was shown to respondent, for the fraudulent purpose of misleading him. It is manifest, from the nature of the subject matter, that the value placed upon the stock in respondent's mind was due to the belief that this so-called match machine of extraordinary capacity actually existed, and was also the actual property of appellant company. The statements made in the prospectus which was placed in respondent's hands are alleged to have been false. This circular is alleged to have been issued by authority of the trustees and officers of the corporation for the purpose of inducing the purchase of treasury stock.

"A prospectus issued by the authority of the directors or the stockholders of a corporation may be relied upon by a person in subscribing for stock, and if the prospectus contains a false representation, and the subscription is made by reason thereof, such representation is binding upon the corporation. . . . Nevertheless a subscriber may have rescission where the prospectus is not an honest,

candid, straightforward document, but suggests that which is untrue, and is in a high degree misleading." Cook, Stock & Stockholders (3d ed.), § 143.

The same rule is stated in Thompson's Commentaries on the Law of Corporations, vol. 1, § 452, as follows:

"Where the promoter of a company, together with the directors, puts forth a fraudulent prospectus, on the faith of which a person is induced to purchase shares of the company, he may bring a bill in equity against the company, the directors and the promoter, and under it he will be entitled to a rescission of his contract."

The foregoing statements of the principle involved here made by eminent authors seem to be founded in natural justice, and the minds of reasonable men instinctively accept them as correct statements of the rule that should govern the conduct of men under the circumstances named. The authors do not, however, state the rule upon their own authority alone, but they cite the decisions of able courts in support thereof. Concerning the general principle governing fraud in obtaining subscriptions to the capital stock of a corporation, the above cited volume of Cook on Stock & Stockholders, at § 140, further states the rule as follows:

"The modern doctrine, however, both in this country and in England, has completely exploded the theory that corporations are not chargeable with the frauds of their agents in taking subscriptions. The well-established rule now is that a corporation cannot claim or retain the benefit of a subscription which has been obtained through the fraud of its agents. The misrepresentations are not regarded as having actually been made by the corporation, but the corporation is not allowed to retain the benefit of the contract growing out of them, being liable to the extent that it has profited by such misrepresentations. The question of the authority of the agent taking the subscription is immaterial herein. It matters not whether

he had any authority, or exceeded his authority, or concealed its limitations. The corporation cannot claim the benefits of his fraud without assuming also the representations which procured those benefits."

The above stated rule pertaining to subscribers for stock applies with equal force here. It is true, respondent was not an original subscriber for stock, but he was a purchaser of shares which belonged to the company, theretofore set apart as treasury stock. The contract of purchase was with the company, and the money paid was as much for the benefit of the company as if paid on an original subscription. For all the foregoing reasons, we think the complaint states a cause of action for the relief asked.

Errors are assigned upon the introduction of evidence, but the cause is triable *de novo* here, and, as we have often held, if there is sufficient competent evidence to sustain the judgment, it will be affirmed, even though some incompetent evidence may have been erroneously admitted.

Errors are assigned upon the findings of facts and conclusions of law. The evidence is sufficient to support the material allegations of the complaint, which have already been recited. The findings are in substantial accord therewith, and we think were not erroneously made. The conclusions of law follow from the findings, within the law as hereinbefore discussed.

It is argued that respondent should be estopped to wage this action, for the reason that he waited about eighteen months before seeking a rescission. The complaint alleges that, within a reasonable time after respondent ascertained that the statements and representations were false, he tendered back the stock and demanded a rescission. The allegation was sufficient, as against de-

murrer, and in the absence of a motion for more definite statement of the time. Respondent himself testified that, until within six months of the time of the trial, he had always believed that such a match machine existed, and that it belonged to the company. The discovery of the falsity of the representations, as shown by the evidence, must have been made about the month of May, 1903. The complaint was verified June 24th of that year, and the demand for rescission alleged therein must have been made within the period of one month after discovery. Respondent therefore acted with sufficient diligence.

It appears that, some time after respondent became the holder of the aforesaid stock, the said Holes, the alleged inventor of the match machine, and a large holder of stock, caused to be pledged to respondent 1,000 shares of stock in appellant company, as a guaranty that respondent's stock would, within ninety days from the date of the pledge, become worth $1.50 per share. The guaranty contract not being fulfilled, respondent proceeded to dispose of the collateral stock by exchanging it for other stock in another corporation. Whether the stock received in exchange was of any actual value does not appear. We refer to this circumstance for the reason that appellant argues that it shows respondent to have been trafficking in appellant's stock, and that such fact should estop him to rescind his contract of purchase of his original stock. We do not see that the disposition of the stock held as collateral bears any relation to the original contract of purchase. If that contract was induced by fraud, respondent is entitled to have it rescinded. The transaction as to the collateral stock concerns only the pledgor, the respondent, and the latter's transferee. It does not affect the questions before us in this appeal.

The same is also true of 600 other shares taken by respondent as collateral security for a loan of $450, made by him to a Mr. Lanning, hereinbefore mentioned as assistant manager of appellant company. This circumstance is also urged by appellant as in some way carrying with it the element of estoppel. We are unable to see that the fact of respondent's accepting said stock as security for an actual loan, even though afterwards absolutely transferred to him, in any way estops him to assert his rights under his original stock purchase contract, fraudulently procured.

The judgment is affirmed.

ANDERS, DUNBAR, and MOUNT, JJ., concur.

FULLERTON, C. J., did not sit in this case.