[No. 5365. Decided April 29, 1905.]

HERMAN DANIEL, *Respondent*, v. H. M. GLIDDEN, *Appellant*.[1]

FRAUD—BILLS AND NOTES—FALSE REPRESENTATIONS AS TO FI-
NANCIAL RESPONSIBILITY—INVESTIGATION OF TRUTH. The payee
of a note, who was induced to loan money by the fraud of officers
of a corporation, is not bound to investigate the truth or falsity
of representations concerning the financial ability of the
corporation, where it would involve the examination of a
concern represented as doing a banking business, and of pub-
lic records, and a large number of houses said to be building,
since the means of knowledge are not open, and reasonably call
for reliance on the representations.

BILLS AND NOTES—OFFICERS OF CORPORATION—FRAUD—INDIVID-
UAL LIABILITY. Where a loan is secured by false representations
as to the responsibility of a corporation, a note therefor, signed
in a representative capacity by the officers who procured the
loan and received the money, is their individual obligation.

BILLS AND NOTES—CORPORATIONS—SIGNATURE OF OFFICERS—REP-
RESENTATIVE CAPACITY—FAILURE TO DISCLOSE PRINCIPAL. Under
Laws 1899, p. 345, § 20, an officer of a corporation who signs
a note without indicating his representative capacity other than
by following his name by "Secy." and no words are used show-
ing that the corporation is obligated, is individually liable on the
note, although the note was written on a blank form of a receipt
giving the name of a corporation at the top, and its corporate
seal was attached.

Appeal from a judgment of the superior court for King
county, Griffin, J., entered March 19, 1904, upon find-
ings in favor of the plaintiff, after a trial before the court
without a jury, in an action on a promissory note. Af-
firmed.

*E. C. Macdonald, R. S. Eskridge* and *D. F. Kizer*, for
appellant, in addition to cases mentioned in the opinion,

[1] Reported in 80 Pac. 811.

cited: 14 Am. & Eng. Ency. Law (2d ed.), 128; *Farns-worth v. Duffner,* 142 U. S. 43, 12 Sup. Ct. 164; *Andrus v. St. Louis Smelting & Ref. Co.,* 130 U. S. 643, 9 Sup. Ct. 645; *Bianconi v. Smith* (Ariz.), 28 Pac. 880; *Reynolds v. Palmer,* 21 Fed. 433; *Darling v. Hines,* 5 Ind. App. 319, 32 N. E. 109. The intention of the parties to make the note the obligation of the corporation is controlling. *Metcalf v. Williams,* 104 U. S. 93; *First Nat. Bank v. Wallis,* 150 N. Y. 455, 44 N. E. 1038; *Benham v. Smith,* 53 Kan. 495, 36 Pac. 997. And the intent was shown by the use of the corporate seal, etc. *Scanlan v. Keith,* 102 Ill. 634, 40 Am. Rep. 624; *Guthrie v. Imbrie,* 12 Ore. 182, 6 Pac. 664, 53 Am. Rep. 331; *Means v. Swormstedt,* 32 Ind. 87, 2 Am. Rep. 330; *Megowan v. Peterson,* 173 N. Y. 1, 65 N. E. 738.

*Walter S. Fulton* and *Vince H. Faben,* for respondent. The plaintiff was not bound to investigate the truth of the representations. 14 Am. & Eng. Ency. Law (2d ed.), 120; *Bondurant v. Crawford,* 22 Iowa 40; *Foley v. Holtry,* 43 Neb. 133, 61 N. W. 120; *Olcott v. Bolton,* 50 Neb. 779, 70 N. W. 366; *Mulholland v. Washington Match Co.,* 35 Wash. 315, 77 Pac. 497. Designation of the signers' representative capacity did not make it the note of the corporation. Mechem, Agency, § 438; *Scott v. Baker,* 3 W. Va. 285; *Robinson v. Kanawha Val. Bank,* 44 Ohio St. 441, 8 N. E. 583, 58 Am. Rep. 829; *Faw v. Meals,* 65 Ga. 711.

HADLEY, J.—This suit was brought to recover of the defendants, Buttner and Glidden, for an alleged personal liability upon a written instrument, of which the following is a copy:

"German American Investment Co. Inc.      No. 409.
"$600.00                    Seattle, Wash., Feb. 8, 1902.
"Received from Herman Daniel                    $600
"Six Hundred .                              Dollars
which we promise to pay six (6) months after date with
interest at the rate of eight (8) per cent per annum.
      "H. M. Glidden, Secy.      Wm. H. Buttner, President."

Inasmuch as the sufficiency of the complaint is attacked,
we shall set forth somewhat fully the averments thereof.
It is alleged that, in consideration of the delivery of said
note to the plaintiff, by the defendants and each of them,
the plaintiff then and there paid to the defendants, and
each of them, the sum of $600, the property of the plain-
tiff. It is also alleged that, in order to induce the plain-
tiff to accept said note and pay to defendants said sum
of $600, the defendants, and each of them, then and there
falsely and fraudulently represented to the plaintiff that
the German American Investment Company owned much
property in the city of Seattle, and was building a large
number of houses in said city; that the capital stock of
the company was $50,000, and that the same was fully
paid up; that the company had a large surplus, did a bank-
ing business, and was a member of the clearing house in
the city of Seattle; that, at any time the plaintiff so de-
sired, the said $600, with interest, would be paid to him
by the defendants and each of them. It is further averred
that said representations were not only false and fraudu-
lent, but were known to the defendants to be such, and
were made for the purpose of creating in the mind of plain-
tiff the false impression that the defendants were finan-
cially responsible, and able to meet their obligations; that,
relying upon the representations as true, and believing
the defendants, and each of them, to be financially re-

sponsible, and officers of an institution such as they described and represented said company to be, the plaintiff paid to them said $600. It is alleged that $100 of said sum has been paid by the defendant Buttner, and judgment is demanded for the balance of $500, and interest.

The defendant Glidden answered separately, denying generally the averments of the complaint, and affirmatively alleging that the German American Investment Company was, at the time the loan was made, a duly organized corporation, with power, among other things, to borrow money on its notes, bonds, or other evidences of indebtedness; that the defendants at said time were, respectively, the duly elected and acting president and secretary of the corporation; that, on or about the 8th day of February, 1902, the plaintiff loaned to the company $600, and that, as evidence of the indebtedness thereby created, the corporation executed and delivered to plaintiff the writing, a copy of which is above set forth. It is also alleged that, if any of the false statements averred in the complaint were made, they emanated from, and were made by, the defendant Buttner, without the knowledge or consent of either the corporation or of the answering defendant, and that the same were never authorized by either the corporation or the answering defendant.

The reply denies that the loan was made to the corporation, and alleges that the money was received and used by the defendants individually, and that the said note is their individual obligation. The reply also admits that the representations were not authorized by the corporation, but denies the remaining allegations of the answer upon that subject.

Upon the above issues, the cause was tried before the court without a jury. Findings of facts were entered to

the effect that the defendants made the representations in the main as alleged. It was found that the corporation had a capital stock paid up in the sum of $600, but not in excess thereof; that it had no surplus, was not a member of the clearing house, and was financially irresponsible and insolvent, all of which was known to the defendants, and unknown to the plaintiff; that the false representations were made for the purpose of causing plaintiff to believe that the note signed by defendants was a valuable security, and worth the amount it represented, and also to cause him to believe that the defendants were president and secretary of a solvent corporation. A new trial having been denied, judgment was entered against defendant Glidden for the amount demanded in the complaint, and he has appealed.

Appellant first contends that the court erred in admitting any evidence at the trial, and in not granting a nonsuit, for the alleged reason that the complaint does not state facts sufficient to constitute a cause of action against the appellant. This contention is based upon the theory that respondent is estopped by his own negligence from complaining of the representations made. It is argued that the means for determining the truth or falsity of the statements were available to respondent, and that he had no right to rely upon the representations without availing himself of such means. The following decisions of this court are cited by appellant as supporting the argument: *Washington Cent. Imp. Co. v. Newlands,* 11 Wash. 212, 39 Pac. 366; *West Seattle Land & Imp. Co. v. Herren,* 16 Wash. 665, 48 Pac. 341; *Griffith v. Strand,* 19 Wash. 686, 54 Pac. 613; *Walsh v. Bushell,* 26 Wash. 576, 67 Pac. 216; *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180; *Sherman v. Sweeny,* 29 Wash. 321, 69 Pac. 1117.

All of the above cases, except *Griffith v. Strand* and

*Sherman v. Sweeny,* relate to representations concerning real estate, and it was held that, when reasonable opportunity exists to examine the condition of a thing so tangible and open as real estate, and where the means of knowledge are as open to the vendee as to the vendor, the former may not close his eyes and refuse to see, relying merely upon the representations of others. The facts in the other two cases involved the same principle. In *Griffith v. Strand* the goods were at hand, and an inspection of them could have been had, if the purchaser had insisted upon it. In *Sherman v. Sweeny* the writing in question was before the signer, and she had the opportunity to read it before signing it.

In the more recent case of *Mulholland v. Washington Match Co.,* 35 Wash. 315, 77 Pac. 497, it was argued that one who has the means for discovering the truth may not rely upon representations, when no fiduciary relation exists, and when he is not overcome by cunning or artifice by reason of being frail in body or mind. This court said:

"It cannot be the law that a person of ordinary faculties may never rely upon representations made to him, even though no fiduciary relation may exist. Each case must depend upon its own circumstances."

It was held that the facts of that case were not such as brought it within the rule of the cases cited above, and we think the same is true of the case now before us. If respondent had sought to investigate the truth of the representations, in the case at bar, he would have been required to examine the books and affairs of the corporation; also, to ascertain if it was a member of the clearing house, to examine the records of the county as to real estate holdings, and to locate and inspect the large number of houses

36-38 WASH.

said to be in course of construction. The rule of the cited cases did not require respondent to make such an examination of the affairs of the concern, which was represented as doing a banking business, as being a member of the clearing house, as having a large surplus, and as owning, controlling and building a large number of houses. Such a requirement would render the transaction of business in many instances burdensome and impracticable. The law must accord to men the right to place reliance upon others under such circumstances. The representations were as to facts and were not expressions of opinion. They related to matters peculiarly within the knowledge of appellant and his codefendant, and were made as of their own knowledge, with the intention that respondent should be thereby induced to act.

In the very recent case of *Lawson v. Vernon, ante* p. 422, 80 Pac. 559, it was pointed out that the cases cited here by appellant apply where the means of knowledge are as open to the vendee as to the vendor, but that where the false representation is as to a material fact, within the knowledge of the vendor and entirely without the knowledge of the vendee, and where the circumstances are such as reasonably call for reliance thereon, the rule is that the vendee may reply upon the representation. Tested by such rule, the respondent had a right to rely upon the representations of appellant and his codefendant, and the complaint states a cause of action against them.

It is next urged that the court erred in concluding from the facts that the note was the individual obligation of appellant and his codefendant. We think the finding as to the fraudulent acts of Glidden and Buttner establish that the note was their individual obligation. The indebtedness was created because of their fraudulent

representations, and they should not be allowed to escape liability because of the form in which they put the evidence of their indebtedness. It is argued that the indebtedness is that of the corporation, but, if this contention should prevail, appellant would be permitted to take advantage of his own wrong. The credit was given relying upon statements expressly made by Buttner and appellant, or at least in which appellant acquiesced, as to the flourishing condition of a corporation of which the two were officers. Respondent believed that men so identified with a flourishing institution were responsible, and he was thereby induced to give them credit. Appellant says that he did not use the money. The evidence shows that the corporation neither received nor used the money. Appellant himself deposited the amount of the draft received from respondent to his own credit in a Seattle bank. It is true he says he turned it over to his codefendant, but the fact remains that the corporation did not receive it. We think the findings are sustained by the evidence, and it is thereby established that this loan was procured, and the note executed, as the result of the fraudulent acts of appellant and his associate. It was not the act of the corporation, and was not its obligation, but was the individual obligation of the two who procured and received the money, and who signed the note.

We have somewhat extensively discussed the question of liability arising out of the fraud, inasmuch as the transcript, statement of facts, and briefs are largely devoted to that subject. But, aside from that, we think the judgment of the court was right upon another ground which is urged by respondent. It will be observed, by reference to the note, that, while the signatures are each followed by words indicating a representative character, yet no principal is disclosed. The words "German Amer-

ican Investment Co., Inc.," at the top constitute no material part of the instrument. The original is before us, and it shows that the above words were merely lithographed upon a blank form of receipt, which was used as a paper upon which to write the note. Appellant's name is followed by the following, "Secy." Assuming that the letters designate him in .the representative character of secretary, yet they disclose no principal. What purports to be the seal of the German American Investment Company is impressed upon the paper, but by no reference is it made a part of the note itself. There are no apt words used in the note showing that the corporation is obligated. Therefore, although appellant's signature is followed by an abbreviated word indicating a representative capacity, yet no obligated principal being disclosed, he cannot escape personal liability under our negotiable instrument law. Section 20 of that statute, Laws 1899, p. 345, is as follows:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

The signatures to this instrument come squarely within the terms of the above section, and the signers are personally liable.

For all the foregoing reasons, we think the judgment of the lower court was right, and it is affirmed.

MOUNT, C. J., FULLERTON, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.