[No. 15502. Department Two. December 30, 1919.]

ANGELA NORMILE, *Appellant,* v. ANNIE DENISON, *Individually and as Executrix of the Estate of S. Normile, Respondent.*[1]

HUSBAND AND WIFE (37, 103-1)—ACTS IN FRAUD OF WIFE—SEPARATION AGREEMENTS. Where a property settlement was induced by the husband's false representations and his concealment of a substantial amount of personal property belonging to the community, which the wife could not have discovered by diligent effort, she may recover her damages, notwithstanding the agreement provided that she waived all rights and claims she might have by reason of any false representations inducing her to enter into it.

SAME (37, 104) — FRAUD — ACTION ON SEPARATION AGREEMENT — PLEADING. Where it appeared from her complaint that a wife was induced to enter into a final property settlement by false representations and concealment, a defense that she knew she had been defrauded by a prior partial settlement and in the final agreement compromised the fraud must be raised by answer, where there was nothing in the complaint to justify assumption of such fact.

SAME (37, 104)—DEFENSES. In an action by a widow to recover a half interest in community property, concealed from her by her late husband upon the making of a property settlement between them, in which she offers to account for all community property received by her in the settlement, the defense that the parties cannot be put in *statu quo* is unavailing, as the court can do equity between the parties.

Appeal from a judgment of the superior court for King county, Jurey, J., entered April 10, 1919, upon sustaining a demurrer to the complaint, dismissing an

[1] Reported in 186 Pac. 305.

action to recover a community interest in property. Reversed.

*Preston, Thorgrimson & Turner,* for appellant.

*Gill, Hoyt & Frye, Chadwick, McMicken, Ramsey & Rupp,* and *John P. Garvin,* for respondent.

Tolman, J.—This action was brought by appellant against respondent, individually and as executrix of the estate of S. Normile, deceased, to recover one-half of certain community property accumulated by the decedent and appellant during the time they were husband and wife, which, it is alleged, was, at the time of the making of a property settlement between them, fraudulently concealed by the husband.

To appellant's supplemental and amended complaint, a demurrer was interposed on the ground that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was sustained by the court below, and the appellant declining to plead further, a judgment of dismissal followed, from which this appeal is prosecuted.

In substance the supplemental and amended complaint alleges that the appellant and S. Normile were married on June 1, 1892, and that the community thus formed continued until dissolved by a decree of divorce entered May 31, 1917, in an action commenced by the wife on March 28, 1917; that, during their married life, considerable property was accumulated, of which the husband had the entire possession and control, the amount and value of which were at all times concealed from the wife; that, on May 16, 1916, the parties entered into a written agreement, which recites:

"That, whereas, the above parties have been married nearly twenty-four (24) years and are now husband and wife, and have since their marriage accumu-

lated considerable property, both real and personal, and

"Whereas, some differences have arisen between said parties hereto, and

"Whereas, both of said parties are of the opinion that it is advisable and better to divide all their property, both real and personal, separate and community, "Now, therefore," etc.

Then follow provisions by which the wife is to retain her jewelry, and all money and other assets previously given her by the husband, aggregating approximately $4,000 in value; the cash on hand which amounted to $10,000, bonds amounting to $10,131.50, mining stock of the par value of $500, money or bonds due from King county under a contract for grading the Duwamish-Renton roadway, and $5,000 of bonds in escrow in the Seattle National Bank, are all equally divided; a policy of insurance on the life of the husband is given to the wife; the real estate, it is provided, shall remain undivided community property as theretofore. Then follow provisions to the effect that, so long as they shall occupy the same home, the husband shall pay the household expenses, the personal expenses of the wife, the premiums on the life insurance policy, and taxes on real estate; and the profits of his business, after the payment of such expense, shall be equally divided; and that, in the event of their ceasing to occupy the same home, the wife shall thereafter pay for her own maintenance, pay the premiums on the life insurance policy, the taxes and charges on her own property, and the husband shall be entitled to retain the profits of his business; the furniture and effects in the home to be then equally divided, except certain enumerated articles which shall belong to the wife, and the question of blame for the separation shall not affect the settlement. The complaint alleges

that the husband represented that the personal property referred to in the agreement was all the personal property belonging to the community, and that the wife relied solely upon the husband's representations in that respect. It is further alleged that thereafter and on the 28th day of March, 1917, the parties entered into another and subsequent written property agreement, also made a part of the complaint, which recites:

"That, whereas, the above named parties have been married approximately twenty-five years and are now husband and wife, and have since their said marriage accumulated considerable property, both real and personal, and

"Whereas, the parties hereto did on the 16th day of May, 1916, enter into a written agreement which provided, among other things, for a partial division of the property belonging to the parties hereto, and,

"Whereas, since said agreement the parties have lived together, but have again separated, and

"Whereas, the agreement of May 16th, 1916, did not affect a division of the real property belonging to the parties hereto nor of certain personal property belonging to said parties, and,

"Whereas, both of said parties are now desirous of making a full and complete settlement and division of the property interests of the said parties,

"Now, therefore," etc.

Then follows an acknowledgment of receipt by the wife of the various items of property given to her by the prior settlement; a division of the real property, not here attacked; the half of the bonds in escrow in the Seattle National Bank reserved by the husband by the first agreement is given to the wife, as is also all of the furniture and effects in the home, and it is provided:

"(b) All remaining property heretofore belonging to the community, including money, bonds, accounts and bills receivable, are to become the separate prop-

erty of the party of the first part herein, free and clear of any right, title or interest therein on the part of the second party hereto.''

Also:

''Fifth: Said party of the second part hereby waives any rights or claims of any kind that she may or might have against the party of the first part herein by reason of the fact that she is now unaware of the existence of any property, money, bonds, accounts or bills receivable, choses in action or any other property of any kind or description whatsoever of which the community may now be possessed; that she hereby further waives any and all rights or claims that she may or might have against the first party herein by reason of any false representations or concealments of any kind made by the party of the first part to her regarding any of the community assets, and said party of the second part further waives any rights or claims she may or might have against said party of the first part by reason of any false representations or concealments of any profits that said party of the first part might have made in the Duwamish-Renton roadway contract or any other contract; and said second party hereby accepts the property herein described as heretofore given her or given her by the terms of this agreement in full settlement of her share of the entire property interests of the community whether the same has been disclosed to her or not.''

And also:

''Seventh: The party of the first part agrees on his part to pay all bills, claims or judgments which may have been incurred by him or which may in the future be incurred by him in the conduct of his business, including all existing or future obligations of the marital community, except the taxes and assessments referred to in subdivision (b) of the second paragraph of this agreement, and excepting bills personally contracted by second party after October 18th, 1916, and to indemnify and save the party of the second part harmless on account of the same.''

The complaint then alleges that, at the time of the making of the last agreement, the husband, with intent to deceive the wife, fraudulently and falsely represented that he had truthfully disclosed all of the items composing the community estate and the value thereof, and that the property so conveyed and delivered to the wife constituted one-half of all the community personal property; that the attorney who represented the husband had been his counsel for some years and was familiar with his affairs, and that he, too, assured the wife that, so far as he knew or had been advised, the items disclosed constituted all of the community personal property; that she made inquiry at the bank where the husband did business, and of the city officers having charge of the payment of the amounts due the husband under his various contracts, he being a contractor principally engaged in doing work for the city of Seattle, and made such further search and inquiry as was practicable, and learned nothing to cast doubt upon the husband's representations, and nothing to the contrary could have been learned by any inquiry she might have then made; that the husband was not called upon to pay any indebtedness which existed at the time of entering into the contract of March 28, 1917, nor was any such indebtedness thereafter incurred in the conduct of his business, and no such claims were ever presented against his estate, and that the time for presentation of any such claims has expired. It is then alleged that the husband thereafter died testate, and that respondent, after qualifying as executrix, opened certain safe-deposit boxes kept by the husband in his lifetime, and there found and produced cash, local improvement bonds and other securities of the value of $29,000, which the husband had concealed at and prior to the making of the property settlement, and which were a part of the com-

munity estate, the existence of which was wholly un-- known to the wife, who thereafter presented a duly verified claim to the executrix for what she conceived to be her interest therein, and her claim was disallowed. She then brought this action, demanding judgment for $14,330, which, with the amounts she has already received, would, as she claims, equal one-half of the community estate as it actually existed at the time of the settlement.

Respondent argues that, as shown by the complaint, the wife did not rely upon the representations made by the husband, or, if she did, she should not have done so under the circumstances pleaded. It is true that, at the time of the making of the last agreement, the parties had been separated for some months; that she was represented by counsel, and had determined to bring an action for divorce. She might, and if she had reason to suspect the husband's good faith, no doubt would, instead of contracting with him with reference thereto, have taken the whole subject of the property division into court. That she did not do so is consistent with her allegations of reliance upon the husband's representations. Taking, as we must, the allegations of the complaint as true, there can be no doubt that the wife was actually defrauded to the extent of her one-half interest in property worth $29,000, the existence of which was unknown to her. There is nothing in the complaint to indicate any fact or facts which would put her on notice as to her husband's intent to deceive. The second agreement refers to identically the same property in every instance as the first, and having no notice that anything was omitted from the first, the natural presumption was that the property described in the first agreement, made at a time when the parties were, and apparently hoped to continue, living together, was all the property there

was to be divided by the second agreement, made when they were no longer living together. Our statute, Rem. Code, § 5292, as to the burden of proof in transactions between husband and wife, would seem clearly to apply to the first agreement, and if so, lacking any showing as to anything to put the wife on notice, occurring after the execution of the first agreement and before the execution of the second, the same burden would continue. But even though the relation of husband and wife did not exist, or if, by reason of the estrangement, it should not have been relied upon here, the facts were peculiarly within the knowledge of the husband, and, according to the allegations of the complaint, the wife could not have discovered the concealed securities no matter how diligent she might have been. We think the pleaded facts bring the case within the rule laid down in *Mulholland v. Washington Match Co.,* 35 Wash. 315, 77 Pac. 497, and *Daniel v. Glidden,* 38 Wash. 556, 80 Pac. 811.

We cannot hold that one may deliberately conceive a plan to defraud and then, in carrying it into execution, by the use of words such as are contained in the fifth paragraph of the second agreement as above quoted, absolve himself from the consequences. It is conceivable that the wife might have believed that the language referred to was inserted to cover any possible items which may have been forgotten or overlooked in good faith, or even the implements and appliances used by the husband in carrying on his business, which were nowhere mentioned in either contract, but it would shock the conscience to hold that the husband may, by the use of such language, take away all remedy for his deliberate, fraudulent sequestration of a substantial portion of the community estate, which the law entrusts to his sole control and management and of which it requires a true, open and fair accounting

when the community is to be dissolved. No exactly parallel case is called to our attention, but it is generally held that a stipulation in a contract that false or fraudulent representations by which one party has induced the other to enter into it shall not affect its validity is itself invalid and cannot operate by estoppel or otherwise. *Berrendo Irrigated Farms Co. v. Jacobs,* 23 N. M. 290, 168 Pac. 483; *Hofflin v. Moss,* 67 Fed. 440. Even though this language should be held sufficient to put the wife on inquiry, we have already seen that the complaint alleges that discovery could not have been made by any inquiry within the wife's power to make, and the nature of the concealment alleged warrants such a conclusion.

Nor can we follow counsel for respondent in his argument that it appears on the face of the complaint that appellant knew she had been defrauded by the first agreement and that by the second she settled her claim for damages and released the fraud. Of course, one who has been defrauded and knows it, may compromise and settle his right of action for the fraud, but if any such condition obtains here it must be raised by answer, as we can find nothing in the complaint which will justify us in assuming such to be the fact.

It is further contended that a party cannot rescind a contract without offering to put the other party in *statu quo.* That is undoubtedly the law, but, as we view it, this is rather an action to recover damages suffered by reason of the fraud than one for rescission. In any event, appellant in her complaint offers to account for all of the community personal property received by her, and should she finally prevail the court can, by its judgment, do equity between the parties. *Moor v. Moor,* 24 Tex. Civ. App. 150, 57 S. W. 992. Being satisfied that the supplemental and

amended complaint states a cause of action, the judgment appealed from will be reversed, with directions to overrule the demurrer.

Judgment reversed.

HOLCOMB, C. J., BRIDGES, MOUNT, and FULLERTON, JJ., concur.