[No. 15362.  Department Two.  January 27, 1920.]

NETTIE HOWELL, *Appellant*, v. L. A. DUNNING,
*Respondent*.[1]

DIVORCE (47-1, 70)—VACATION—FRAUD—DIVISION OF PROPERTY.  A
decree of divorce, awarding the wife but $3,000 of the community
property, arranged upon the mutual agreement of the parties, will
be set aside for the fraud of the husband, where it was induced by
falsely representing that the community property, admittedly worth
$16,000, was of the value of only $6,000, and by dissuading the wife,
who was ignorant of the facts, from seeking legal advice; since it
was his duty to make full disclosures and a fair division or put her
on notice that they were dealing at arm's length.

DIVORCE (47-1, 70)—VACATION—FRAUD UPON COURT.  A divorce,
granted on a complaint filed one year previously, after condonation
of all the charges, is a fraud upon the court which should be set
aside, were it not for the fact of a second marriage and that innocent
parties would suffer.

Appeal from a judgment of the superior court for
Lincoln county, Sessions, J., entered October 18, 1918,
dismissing an action to set aside a property settle-
ment and to modify a decree of divorce, tried to the
court.  Reversed.

*Moye Wicks* and *Crandell, Williams & Crandell,* for
appellant.

*Plummer & Lavin* and *W. H. Smiley,* for respondent.

TOLMAN, J.—Prior to April, 1914, the respondent
and appellant were husband and wife, residing to-
gether as such in the town of Harrington, which had
been their home for several years.  At practically the
same time, the respondent, through his attorney at
Davenport, and the appellant, through her attorney at
Spokane, each began a suit for divorce from the other,
and shortly after the service of the respective com-

[1] Reported in 187 Pac. 365; 188 Pac. 30.

plaints, the parties composed their differences and re-
sumed their marital relations. Nothing was done to-
wards dismissing either suit, and both parties ap-
peared to have considered that both actions were then
abandoned. One year later, on April 15, 1915, trouble
again arose between the parties, and it was agreed be-
tween them that they should go to Davenport and the
husband should secure a divorce upon the complaint
which he had prepared and served a year before, and
then, or on the way to Davenport, the husband sug-
gested that, in view of his liabilities and obligations,
he could pay her but $3,000, and that only in install-
ments, which would be her fair share of the community
property, and the remainder of the property should
become his separate estate; explaining in some detail,
according to appellant's testimony, that he was heavily
in debt, that the expenses of his business absorbed the
profits, and that, after deducting the indebtedness, the
community estate was not worth to exceed $6,000. The
wife expressed a wish to have her attorney present,
and to have the benefit of his advice, but the husband
assured her that would be a useless expense, and that
the proposed $3,000 settlement was all that the court
would give her in any event. The husband denies that
he told his wife that the value of the community prop-
erty was only $6,000, but does not deny that the wife
was entirely without business experience; had no
knowledge of his business, its value and earnings;
that he had enjoined upon her the strictest economy,
because he claimed he was overburdened with indebt-
edness; had refused her requests for money for the
same reason, and testified that he never, at any time,
told her the value of their joint property, and seems
tacitly to admit that the wife relied upon him to be
fair in the matter. The wife, as she now claims, be-
lieving that the net value of the community property

was $6,000, and relying upon the husband's statement
with respect thereto, consented to the decree awarding
the husband the divorce and the custody of three of
their five children, and awarding her the custody of the
two remaining children, with a provision for $25 per
month to be paid by the husband towards their sup-
port, and a property settlement of $3,000, payable
$500 in cash and the balance in annual installments,
with interest.

It is admitted that the husband's attorney under-
took to act for both in arranging the property settle-
ment and procuring the entry of the decree, and there
is nothing in the record to indicate that the attorney
acted in any other than a fair and impartial manner
respecting the settlement. Neither is there anything
to indicate that the attorney knew anything more of
the value of the community property or the earning
capacity of the business carried on by the husband than
did the wife. And, acting for both upon a subject
upon which they were apparently agreed, there ap-
pears to have been no reason for him to make such
an investigation as might have been thought proper by
one acting solely in the interest of the wife. After the
entry of the decree, the wife went to California, and
in the fall of 1916 first learned facts that indicated
that she had been deceived in the property settlement,
and thereafter brought this action, attacking only that
portion of the decree which provides for the property
settlement. From an adverse judgment below, she
appeals.

Considering the nature of the case, the evidence is
singularly lacking in conflict upon most of the vital
points. As already stated, the respondent admits that
appellant, while his wife, knew nothing about the de-
tails of the business; does not deny that he commonly
refused her information when she inquired; and one

reading the record can hardly escape the conclusion, whether the husband's testimony is accepted or the testimony of the wife, that the wife relied absolutely upon the husband in this matter of the property settlement. This being so, in dividing that which belonged equally to both, but which the law placed exclusively in the possession and control of the husband, common justice, common fairness, and the law, all alike, require the husband to disclose fully the nature and value of the property to be divided and to make a fair division, or else put the wife on notice that they were dealing at arm's length and advise her to seek counsel and receive assistance from some other source. *Normile v. Denison, ante* p. 205, 186 Pac. 305. The husband, having dissuaded the wife from seeking the advice of her own attorney, must assume the same loyalty to her interest as her attorney would have shown, and whether his fraud be active or passive is immaterial.

That the amount paid to the wife was grossly inadequate is practically admitted. The husband himself testified in his own behalf as to the value of the community property at the time of the settlement, as follows:

"Q. Are you able to give at this time what your property, what you considered your property was worth at that time over and above your debts, over your liabilities? A. Why, I should imagine it was worth from $12,000 to $14,000. I wouldn't say whether it was worth that much or less. It could not have been worth over that."

While his bookkeeper, to whom he referred all questions of figures, and who, as he stated, knew all about his financial affairs, testified that the net assets of the firm in which the husband was a partner and half owner, for the year 1914, being the year immediately preceding the entry of the decree, were of the value of

$45,036.80, and the net profits of the firm for that year were $13,495.95. In 1915, the year the decree was entered, the firm made a net profit of $43,145.68, and in 1916 the net profit was $63,017.79. Admitting that these are book profits only, and that they might never be realized in full, still, at the beginning of the year 1917, respondent bought out his partner's interest in the firm and, according to his own testimony, paid him $35,000 therefor. The bookkeeper, who appears to have had a thorough, knowledge of conditions, also places a value upon respondent's interest in the firm, at the time the decree was entered, of $25,000, which valuation respondent in no way disputes. Taking the bookkeeper's figures as to the value of that part of the community property invested in the partnership, and adding to it $2,000, which respondent himself fixed as the value of the community property not invested in the partnership, we have a community estate valued at $27,000, the whole of which the husband seeks to retain, after paying the wife, who, so far as appears, has done her full share in helping to acquire it, but a small fraction thereof. Respondent testified to community indebtedness outside the partnership of $10,149. While this appears only by his testimony, and there are some facts shown which cast doubt upon some of the items included, yet we are disposed, under the record, to allow this offset, this reducing the net value of the community property, at the time of the entry of the decree, to $16,851, the wife's half of which was $8,425.50. Deducting the sum of $3,000 already paid her, she should be allowed the difference of $5,425.50.

Appellant asks us, if we find the wife has been defrauded, to treat the community estate as undivided, order an accounting, and give the wife the benefit of the earnings subsequent to the entry of the decree.

This we cannot do, for the community was then dissolved; it was the purpose to then divide the community property, and the wife is entitled to receive what she would have received if no fraud had been practiced upon her, plus only legal interest during the time it has been withheld from her.

The record discloses a state of facts with reference to the entry of the decree of divorce by consent upon a complaint verified and served a year before, during all of which intervening time the parties had lived together as husband and wife, thus working a condonation of all matters charged, which amounted to a fraud upon the trial court, and cannot be permitted to pass here without comment and condemnation of all concerned therein. Neither party has attacked the decree except in the one particular of the property settlement, yet, did it not appear that appellant has remarried and has a child by her second husband, we should feel it our duty, of our own motion, to direct the trial court to set aside the decree *in toto;* but since to do so would be to punish the innocent with the guilty, we feel constrained to direct the trial court to permit the decree to stand as to the divorce, the custody of the children, and the provision for their support, but to modify it as to the property settlement as hereinbefore indicated.

Judgment reversed.

HOLCOMB, C. J., MOUNT, BRIDGES, and FULLERTON, JJ., concur.

[Decided March 1, 1920.]

PER CURIAM.—In the opinion heretofore filed in this case, it is said:

"The record discloses a state of facts with reference to the entry of the decree of divorce by consent upon a complaint verified and served a year before,

during all of which intervening time the parties had lived together as husband and wife, thus working a condonation of all matters charged, which amounted to a fraud upon the trial court, and cannot be permitted to pass here without comment and condemnation of all concerned therein."

While adhering strictly to the views thus expressed, it is but fair to say that none of the attorneys now appearing for respondent appeared for, or in any sense represented, him in the divorce action, a fact which should have been set forth in the original opinion. Our attention being called to the oversight, we make haste, in justice to respondent's present counsel, to say that we find nothing in the record reflecting upon them or either of them in the slightest degree.