DALHOFF CONST. CO. v. BLOCK et al.

(Circuit Court of·Appeals, Eighth Circuit.  October 19, 1907.)

No. 2,537.

SALES—VALIDITY OF CONTRACT—FALSE REPRESENTATIONS BY SELLER.

Defendant corporation, through its manager who was a man of large experience, ordered from plaintiff's agent certain steel bars for making tools, the number of bars, dimensions of each kind, and price per pound being specified.  Before the order was written out for signing, plaintiff's agent, in answer to an inquiry, stated that the cost would be about $200, but when the steel arrived it amounted to more than $2,100.  There was no claim that the steel shipped was not in all respects in accordance with the order.  *Held*, that such statement as to the cost did not constitute a fraudulent representation which invalidated the contract; the means of ascertaining the weight of the bars being equally well known and available to both parties so that defendant had no right to rely on such statement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 79–83.]

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

H. F. Auten, for plaintiff in error.
J. W. Blackwood, for defendants in error.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge.  Octave Block and Paul Block, partners doing business at Mulhouse, France, under the trade name of Universal Metal Company, sued the Dalhoff Construction Company, an Arkansas corporation, for the price of a shipment of steel bars.  The defense was that the order for the steel was procured by fraud and deceit of plaintiffs' traveling salesman; that defendant refused to accept the steel on arrival, and therefore was not indebted.  At the conclusion of the evidence the trial court directed a verdict for the plaintiffs, and judgment followed.

The material facts from defendant's standpoint are as follows:  One Dreyfus, the plaintiffs' traveling salesman, called at defendant's office in Little Rock, Ark., and sought of Dalhoff, its general manager, an order for steel bars.  The price named was 39 cents per pound, and the quality was shown by samples.  After some solicitation by Dreyfus, and praise of his wares, Dalhoff finally said he would use a small order, and that Dreyfus might send enough to make a certain number of drills and tools for which the steel was especially adapted.  Dreyfus made a memorandum of the items, and figured up the cost.  To an inquiry of Dalhoff he replied it would amount to about $200.  Dalhoff then turned to the secretary and treasurer of his company and told him that Dreyfus would dictate to him an order for some steel, and to sign it when finished.  The order as dictated, written out and signed was as follows:

Universal Metal Co., Mulhouse, France—Gentlemen: Please ship us, by freight, the following order of Metalos Steel: 3 bars 1¼″ Octagon; 3 bars 1⅛″ Octagon; 3 bars 4″ square for pins; 3 bars 2½″ square for tools; 3 bars

1″ x 8″ square for bushings; 3 bars 1½″ square for sets; 3 bars 1¾″ square for sets—bars 12 to 18 feet long. Terms 3 per cent. against bill of lading. Price 39c per pound, f. o. b. Little Rock, Ark.

Yours truly,                    Dalhoff Construction Co.,
              Per John A. Mitchell, Secretary and Treasurer.

The steel described in the order arrived in Little Rock in due time. It weighed 5,561 pounds, and at the agreed price came to $2,168.79. There was no claim by defendant that the steel was not of the quality ordered, that it was not in all respects as specified in the order, or that it was more than sufficient in quantity to make the drills and tools mentioned by Dalhoff. Nor was it claimed that Dreyfus in dictating the order changed the items as verbally agreed upon. The narrow compass of the defense is shown by the averment of the answer that Dreyfus "wrote up the order which defendant signed for a certain number of bars of each kind and represented to defendant that the order as drawn would amount to only $200." In other words, the defense rests upon the claim that the order as drawn, drawn as verbally agreed upon, was induced by misrepresentation as to the amount it would come to. Since the price of the steel per pound was agreed on, the misrepresentation made was substantially one as to the weight of 21 bars of steel of the lengths and thicknesses specified in the order. There was no complaint of an undue proportion of the longer bars. The actual weight was more than 10 times that contemplated by Dalhoff. The case turns upon the question whether Dalhoff had a right to rely on the statement of Dreyfus.

Dalhoff was a man of large experience in handling steel. For 28 years he had been engaged in railroad building, and was fairly familiar with the weights of steel used in such construction, and of the tools and machinery employed in it. He knew there were tables obtainable by him from which he could have learned the weight of the steel he ordered, but he did not consult them. He failed not only to avail himself of means of information that were accessible, but to exercise his own judgment matured by long experience. The approximate weight of the steel was a simple problem for him, and in buying he had no right to rely upon the representation of the selling agent. There was no relation of trust and confidence between the parties which required of Dreyfus the observance of especial good faith, and no such character, condition, or location of the subject-matter of the contract as entitled one party to rely upon the word of the other. In Slaughter's Adm'r v. Gerson, 13 Wall. 379, 383, 20 L. Ed. 627, it was said:

"Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another."

The judgment is affirmed.