[No. 6823.  Decided January 20, 1908.]

H. C. PIGOTT, *Appellant*, v. A. B. GRAHAM, *Respondent*.[1]

SALES — FRAUD — ACTION FOR DECEIT—RELIANCE ON REPRESENTA-
TIONS—DUTY TO INVESTIGATE—PLEADINGS—COMPLAINT—SUFFICIENCY.
A complaint in an action for damages for deceit in a trade whereby
two rival printing establishments in the same city were consolidated,
is demurrable for failure to state sufficient facts, where it appears
that the vendee and vendor were business managers and stockholders
in the rival companies, that the stock on hand alleged to be mis-
represented in value was at hand, and there was no allegation that
plaintiff could not have conveniently investigated the same and the
representations as to outstanding debts, nor that the defendant con-
cealed the property or induced plaintiff to refrain from making an
investigation of the stock and financial standing of defendant's com-
pany; since no fiduciary relations existed and means of knowledge
was equally open to both parties (FULLERTON, J., dissents).

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 3, 1907, upon sustaining a demurrer to the complaint, dismissing an action for damages for false representations inducing the execution of a contract.  Affirmed.

*Peters & Powell*, for appellant.

*Chas. F. Munday*, for respondent.

DUNBAR, J.—The appellant brought an action against the respondent for damages alleged to have been caused by reason

[1]Reported in 93 Pac. 435.

of the deceit and misrepresentation of respondent which induced him to enter into a certain contract. The material facts alleged in the complaint are, that the Metropolitan Press was a corporation having a capital of $60,000, consisting of six hundred shares of the par value of $100 each, and that said shares of stock were worth $65,000, of which stock the appellant, Pigott, owned four hundred and seventy-five shares; that the Graham-Hickman Company was a corporation having a capital of $50,000, consisting of five hundred shares of the par value of $100 each; that of this stock Graham, the respondent, owned seventy-seven shares; that each company was doing business in Seattle; that the Graham-Hickman Company was, until the 29th day of March, 1905, engaged in the business of printing and the manufacture of paper boxes in the city of Seattle; that the Metropolitan Press was, until said last-mentioned date, in the printing and binding business in said city; that during the month of March the respondent, Graham, approached the appellant, and opened negotiations with him for the union and consolidation of the business and properties owned by the aforesaid corporations; that said negotiations were carried on between the plaintiff and the defendant and through them with the other stockholders of said corporations respectively, extending over a period of several days; that in order to induce the appellant to consent to such union and consolidation, the respondent stated and represented to the appellant that the Graham-Hickman Company was solvent, in a prosperous condition, and conducting a highly profitable business, and then had on hand a stock of merchandise to the amount in value, according to the inventoried cost thereof, of $37,932.80; that it had bills receivable of the face value of $5,447.80, and other property aggregating in excess of $100; that the said Graham-Hickman Company owed no indebtedness excepting mortgage bonds to the amount of $42,500, bills payable to the amount of $2,119, and accounts payable to the amount

of $3,108.84; that the appellant believed these statements
and, so believing and relying upon them, agreed with the
respondent that the two companies aforesaid should be con-
solidated into a new corporation to be called the "Metro-
politan Press Printing Company," the property of the two
original companies to be transferred to the Metropolitan Press
Printing Company, each stockholder of the respective com-
panies to receive such a proportion of one-half of the stock of
the new company as his shares in the original companies bore
to the capital stock of the new company; and that in con-
summation of said agreement a new corporation, known as the
Metropolitan Press Printing Company, was organized by the
stockholders of the Graham-Hickman Company and the Met-
ropolitan Press, on or about the 28th day of March, 1905,
with a capital stock of $100,000, divided into one thousand
shares of $100 each; that the appellant subscribed for three
hundred and seventy-six shares of said capital stock, and the
respondent subscribed for seventy-seven shares, and that all
of the capital stock of said corporation was duly subscribed
on the 28th day of March, 1905; that thereupon the Graham-
Hickman Company conveyed all of its property and assets
of every kind and description to the said Metropolitan Press
Printing Company, and at the same time the Metropolitan
Press conveyed all of its property and assets of every kind,
except a small portion thereof, to the said Metropolitan Press
Printing Company; that at the time of making said convey-
ance to the Metropolitan Press Printing Company, in order to
induce this plaintiff to complete and consummate the plan of
consolidation as aforesaid, the respondent stated and repre-
sented to the appellant that the Graham-Hickman Company
was then transferring and conveying to the Metropolitan Press
Printing Company all the property and assets which he, the
said defendant, had theretofore stated and represented that
the Graham-Hickman Company possessed; that in truth and
in fact the statements and representations made by the ap-

pellant to the respondent, to the effect that the said Graham-Hickman Company had, as a part of its property and assets, merchandise of the amount of $37,932.80, according to the inventoried cost thereof, were false and untrue, and the value of said merchandise was in reality only $12,847.73; and that the representation that the Graham-Hickman Company did not owe on account of bills payable any amount in excess of $2,119 was false and untrue, and that it did owe at that time the sum of $4,544 in excess of the said $2,119; that the representation that the Graham-Hickman Company transferred all the property and assets of which it was possessed was untrue, and that the representation made that the company was solvent and in a prosperous condition and doing a prosperous business was false and untrue. This suit is brought to recover the difference between the actual value as alleged of the Graham-Hickman Company and the value alleged by the respondent Graham. Demurrer was interposed to this complaint, to the effect that it did not state a cause of action, the court sustained the demurrer, the action was dismissed, and appeal was taken from the judgment of dismissal.

It will be noticed from the complaint that this is a plain action for deceit, the corporations not in any way being involved. But the essence of the complaint is that the respondent, by false representations, induced the appellant to make a trade by which he was damaged; and without discussing any of the preliminary questions discussed by the respondent in relation to the power of the appellant to bring this action, which it is claimed is an action in effect for the benefit of the corporation, we are satisfied that, as between the appellant and respondent, considering them as vendor and vendee, there is no cause of action stated. There is no allegation in the complaint that the property and assets of the Graham-Hickman Company were concealed from plaintiff. There is no allegation that it was impossible or inconvenient for him to have made an examination into the financial standing of the com-

pany. He does not allege that he was induced by Graham to refrain from making such an examination as any prudent person would make under the circumstances. He does not even allege that such an examination was not made. This court in an early case, viz., *Washington Central Imp. Co. v. Newlands,* 11 Wash. 212, 39 Pac. 366, laid down the rule that, where there were no fiduciary relations existing between the seller and the buyer, it was the duty of the buyer to make an examination with reference to the representations made by the seller and as to the value of the property purchased, and that a purchaser who refused to do this could not call upon the law to stand *in loco parentis* to him in the ordinary transactions of business and ordinary dealings with his fellow men.

Cases of this character are frequently hard to determine, for there are so many independent circumstances surrounding each case that it is difficult sometimes to discern the dividing line between that character of fraud and misrepresentation which justifies the purchaser in relying upon such representations, and those representations which are made where the parties are standing on a plane, where the facts which are the subject-matter of the representations are ascertainable, and where it is the duty of the purchaser to put on foot such examination as is necessary to determine the facts concerning which the negotiations are made. But notwithstanding these different circumstances, there are certain basic principles upon which the cases must be adjudicated, and the difficulty is not so much to determine the law as to determine whether the particular circumstances bring the cases within the established rules of law. This court, in the case above referred to, said:

"We think the proper and sensible rule was laid down by the United States supreme court in *Slaughter's Adm'r v. Gerson,* 13 Wall. 379, where it was held that the misrepresentation which would vitiate a contract of sale and prevent a court of equity from aiding its enforcement, must relate to a material matter constituting an inducement to the contract, and respecting which the complaining party did not possess at hand the means of knowledge."

That court, after announcing the rule as noted, further said, through Justice Field, who delivered the opinion of the court:

"A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to consideration when he complains that he has suffered from his own voluntary blindness and been misled by overconfidence in the statements of another." *Slaughter's Adm'r v. Gerson*, 13 Wall. 379, 20 L. Ed. 627.

This doctrine was followed by this court in *West Seattle Land & Imp. Co. v. Herren*, 16 Wash. 665, 48 Pac. 341; *Griffith v. Strand*, 19 Wash. 686, 54 Pac. 613; *Walsh v. Bushell*, 26 Wash. 576, 67 Pac. 216; *Samson v. Beale*, 27 Wash. 557, 68 Pac. 180; *Sherman v. Sweeny*, 29 Wash. 321, 69 Pac. 1117.

In some more recent cases, for instance in *Mulholland v. Washington Match Co.*, 35 Wash. 315, 77 Pac. 497, it was said that it could not be the law that a person of ordinary faculties may never rely upon representations made to him even though no fiduciary relations existed and that each case must depend upon its own circumstances. In that case the representations were made with regard to an ingenious device for manufacturing matches, and involved a special, skilled knowledge of the mechanism itself. In addition to that, the machine was not at hand and the court found that it did not in fact exist, but that the facts with reference to the existence of such a machine and the patent thereof, together with the ownership thereof, were peculiarly within the knowledge of the appellant's officers and agents who made the representations.

In. that case the court held that the purchaser was not entitled to rely upon the representations made by the seller, but reiterated the doctrine that, where the subject-matter was at hand and the truth easily ascertainable, the purchaser must use his senses, and could not afterwards be held to say that he had been defrauded if he neglected to avail himself of the present and reasonable opportunity to learn the truth. This case was followed by *Daniel v. Glidden*, 38 Wash. 556, 80 Pac. 811, and was really the basis of the decision in that case. This case more nearly approaches the facts as stated by the complaint in the case at bar, but yet we think it is easily distinguished in principle. There the payee of a note was induced to loan money, by the fraud of officers of the corporation, and it was held that the payees were not bound to investigate the truth or falsity of the representations concerning the financial ability of the corporation, facts which would involve the examination of a concern represented as doing a banking business, and of public records, and a large number of houses said to be building; that the means of knowledge were not open, and that under all the circumstances of that case there was a reasonable call for reliance on the representations made. There, too, the officers, who represented themselves to be doing a certain banking business and who were doing an intricate kind of business, were dealing with people who were not acquainted with that kind of business, and who could probably not have understood the intricate business of the appellants if they had undertaken to make an examination. At least, it would have had to be done by employing expert assistance, and at a great expense and trouble.

But here it will be observed the parties were in the same kind of business, competitors in the printing business in the city of Seattle, both stockholders in the business and stockholders and managers of their respective businesses. It was their knowledge of the business in all its details that prompted them to enter into this consolidation, so that money might be

made thereby and expenses saved. The property was on hand; it was all in the city of Seattle, and it would have been but an act of the most common kind of prudence on the part of the appellant to have investigated the business and books of the concern which he was practically buying. In fact, the representations made by Graham may have been preliminary, and he may have presumed that Pigott would exercise ordinary prudence and make the ordinary investigations before the trade was consummated. Certainly there is no showing that he was prevented by any manipulation, fraudulent or otherwise, on the part of the Graham Company, from making such an examination. There was no obliteration of evidence in the case, as there was in *Lawson v. Vernon,* 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880, where it was held that the vendee had a right of action where he had relied upon false representations of the vendor in pointing out certain lots as the ones offered for sale, when it developed that the lots pointed out were not the lots for which the deed was given, it appearing in that case that where the lots were located the ground was obscured by brush and trees and that the stakes could not be found; and that under such circumstances the vendee had a right to rely upon the representations of the owner in pointing out the certain lots which he offered for sale.

Nor does this case fall within the rule announced by this court in *Northwestern Lumber Co. v. Callendar,* 36 Wash. 492, 79 Pac. 30, where the representations which the court decided the vendee had a right to rely upon were representations with reference to a patent and the working of machinery. There the court held that the representation of the vendor familiar with machinery amounted to a warranty when relied upon by purchasers unfamiliar therewith, and they were induced to purchase by such representations. On the examination of this case it will be found that there was an attempt to make an examination by the vendee, but not having the peculiar knowledge necessary, such attempt proved futile.

In *Griffith v. Strand*, 19 Wash. 686, 54 Pac. 613, it was held that the purchaser of a stock of goods cannot avoid the sale on the ground of fraud, in that false representations were made to him as to the quality, quantity, and value of the goods, when there was no fiduciary relation between the parties, and when it was within the purchaser's power to readily determine the truth or falsity of such representations by an inspection of the goods. In that case it was said:

"It must not be forgotten that the contracting parties were dealing at arm's length. No fiduciary relations existed between them—nothing to inspire confidence or disarm suspicion—and there was no imbecility of age, weakness or disease. The property in question was at hand, and an inspection of it by the defendants could have been made had they insisted upon it. The representations related solely to quantity, quality and value, the truth or falsity of which could have been determined by an inspection. Under such circumstances, we think it will not do to hold that a party may successfully complain of his own failure to exercise ordinary care, prudence, and caution, when, by the exercise thereof, the injury of which he complains could not have arisen."

This language may, it seems to us, be appropriately applied to this case. While it is true that in that case it was a stock of goods the value of which was involved, in this case it is the value of the property of the Graham-Hickman Company which consisted of goods, book accounts, and of the good will of the business. The value of the goods and book accounts could have been easily ascertained by an examination of the corporation, and the good will of the concern is a character of property so indefinite that a statement of its value must necessarily be regarded by any man of any business acumen whatever as very largely a matter of opinion.

It was more recently decided by this court in *Hulet v. Achey*, 39 Wash. 91, 80 Pac. 1105, that a sale of standing timber and sawlogs could not be rescinded by the vendee for false representations by the vendor as to quality, where no claim was made that there was no opportunity to make ex-

amination. In fact, the rule announced by the supreme court of the United States in *Slaughter's Adm'r v. Gerson, supra,* which has been consistently followed by this court, it seems to us is entirely applicable to the case at bar. If contracting parties were allowed, after making contracts and agreements with reference to business and property and after discovering that their trade had not been a profitable one, to annul such contracts either by rescission or by actions for damages, it would render the business conditions of the country perilous and uncertain, make contracts unstable and unreliable, and keep the courts of the state busy in determining matters which ought to have been determined by the parties to the contract before they entered into the same.

The judgment is affirmed.

HADLEY, C. J., MOUNT, CROW, and RUDKIN, JJ., concur.

FULLERTON, J., dissents.