TILLIE J. DEATER, Appellant, v. CITY NATIONAL BANK, Appellee.

No. 43814.

APRIL 6, 1937.

Mayne & Mayne, for appellant.

Tinley, Mitchell, Ross, Everest & Geiser, for appellee.

KINTZINGER, J.—Plaintiff made and delivered her check to the defendant as follows:

"Council Bluffs, Iowa, February 4, 1935.
"Pay to the order of City National Bank       $400.00
Four Hundred and No/100............................................DOLLARS
To Council Bluffs Savings Bank
    Council Bluffs, Iowa.

                (Signed) Geo. H. Mayne"

Indorsement stamped on back:
"Paid, Feb. 5, 1935, City National Bank, Council Bluffs, Iowa."

Plaintiff alleges and offered to prove that this check was executed under the following circumstances: Just prior to the time it was issued, one Pusey McGee made an application to the plaintiff for a loan of $1,200 upon property known as 459 Huntington Avenue, Council Bluffs, Iowa, which he falsely represented to own. McGee showed this property to plaintiff, who agreed to make the loan if McGee could furnish an abstract showing a good merchantable title thereto in him. Thereupon, plaintiff placed $1,200 on deposit to the account of her attorney, George H. Mayne, in the Council Bluffs Savings Bank, with instructions to pay it out upon delivery of an abstract showing a good merchantable title in McGee.

McGee furnished an abstract of title to a vacant lot he owned across the street from the premises on which the loan was to be made, and, by the making of false and forged entries on said abstract showing improvements thereon, and that the property was taxed as improved property, secured an approval of the loan. He also falsely represented that the defendant, City National Bank, held an unrecorded lien of $400 against the premises.

Plaintiff also alleges and offered to prove that the City Na-

88

tional Bank held no lien against said property, but that McGee owed the City National Bank only $163.64 upon his note secured by personal collateral; and also that the bank also held a note of $69.17 for collection against said McGee for one of its customers.

On February 4, 1935, plaintiff's attorney drew a check of $400, payable to the City National Bank, against said $1,200 fund, and gave it to McGee for delivery to the defendant bank for the purpose of satisfying such alleged lien.

McGee delivered the $400 check to the City National Bank, and with it paid off his note of $163.64 and also the other note of $69.17, and received the balance of $167.19 due on the $400 check in cash from defendant.

After discovering the fraud, plaintiff commenced this action against the City National Bank to recover the $400 paid McGee upon the check referred to.

Plaintiff failed to show that the defendant, City National Bank, had any knowledge whatsoever of the fraud perpetrated by McGee upon plaintiff, In fact, it is conceded in the record that the City National Bank did not participate in the fraud practised upon plaintiff by McGee, and had no knowledge thereof whatsoever.

At the trial of the case, plaintiff offered to prove the fraudulent acts hereinabove set out. Objections to all of such testimony by the defendant were sustained by the court. There being no further evidence, the court sustained defendant's motion directing a verdict in its favor, and plaintiff appeals.

Appellant contends that the court erred in sustaining objections to the evidence of the fraud practised upon plaintiff by McGee as hereinabove set out.

"It is hardly necessary to say that a check in the ordinary form is a negotiable instrument both at common law and under statutes relating to commercial paper." 5 R. C. L. 480; First Denton Nat. Bank v. Kenney, 116 Md. 24, 81 Atl. 227, Ann. Cas. 1913B, 1337; Famous Shoe & Clothing Co. v. Crosswhite, 124 Mo. 34, 27 S. W. 397, 26 L. R. A. 568, 46 Am. St. Rep. 424.

The check in this case is in the usual form. It is in writing, signed by the maker, contains an unconditional order to pay a certain sum of money, is payable on demand and to the order of a specified person, and as such contains all of the requirements of an ordinary negotiable instrument. Code of 1935, section 9461.

The record, therefore, shows that the check issued by plaintiff's attorney to the defendant was a negotiable instrument. It was delivered to the defendant bank for a valuable consideration, without knowledge of any defects in the check, and without any knowledge whatever of any fraud perpetrated upon the plaintiff by McGee.

The $400 check was regular on its face and was delivered by plaintiff's attorney to McGee for the very purpose of having it cashed at the City National Bank. It was through plaintiff's act that it was presented to the defendant bank for payment. If plaintiff failed to discover the fraudulent representations of McGee through the neglect of herself or her attorney, and if through such neglect the defendant in the ordinary course of business parted with its money by cashing the check issued to the defendant bank, as payee, without any apparent fault or negligence on its part, then the loss is not chargeable to it. Bell v. Byerson, 11 Iowa 233, 77 Am. Dec. 142; McCormack v. Molburg, 43 Iowa 561; Boddy v. Henry, 113 Iowa 462, 85 N. W. 771, 53 L. R. A. 769; Bixler Co. v. Argyros, 206 Iowa 1081, 221 N. W. 828; Wead v. Ganzhorn, 216 Iowa 478, 249 N. W. 271; Packard Machinery Co. v. Schweiger, 147 Wis. 67, 132 N. W. 606.

In Wead v. Ganzhorn, 216 Iowa 478, loc. cit. 480, 249 N. W. 271, 272, this court said:

" 'A person to whom false representations are made is not entitled to relief because of them if he might readily have ascertained the truth by ordinary care and attention, and his failure to do so was the result of his own negligence. Hence, as a rule, in order that false representations may be ground for an action for deceit or for rescission of a contract entered into in reliance thereon, they must be such as are calculated to impose upon or deceive a person of ordinary prudence, and of such a character that a reasonably prudent person would have relied on them. In other words, where the means of knowledge are at hand and are equally available to both parties, and the subject matter is alike open to their inspection, if one of them does not avail himself of those means and opportunities, he will not be heard to say that he was deceived by the other's misrepresentations.' "

Knowledge of the representations made by McGee as to the existence of an unrecorded lien was readily available to plaintiff.

She or her attorney could easily have ascertained whether or not the City National Bank held an unrecorded lien against the property owned or represented to be owned by McGee. The transaction occurred in Council Bluffs, both parties lived there, and a telephone communication by plaintiff's attorney to that bank would have readily disclosed whether or not that bank held a lien against the property in question. But without so doing, plaintiff, through her attorney, gave her check of $400 to McGee for the purpose of delivery to defendant. Knowledge of the location of the lot purported to be owned by McGee could also have been readily ascertained by simply referring to a city map. The defendant bank paid McGee the full amount of the $400 check received from him, and his knowledge of the fraud practised on plaintiff cannot be imputed to defendant.

In Bixler Co. v. Argyros, 206 Iowa 1081, loc. cit. 1082, 221 N. W. 828, 829, this court said:

"It is a settled rule in this state that, if the means of knowledge of the alleged fraud were equally open to both parties, the law will not interfere to protect one who is negligent."

The inducing fraud that caused plaintiff to part with her $1,200 was the representations by McGee of his ownership of another's property. She did not make the loan because the defendant bank had an unrecorded lien against the property. The defendant bank had no such lien. The damage resulting from the fraudulent statements was accomplished when McGee induced plaintiff's attorney to accept the abstract of title, which made no reference to any lien of the defendant bank. It is, therefore, difficult to see how any statements in reference to an unrecorded lien in any manner caused plaintiff to make the loan, and as such representations were not an inducing cause for the payment of the $400, they cannot be imputed to the defendant bank, as a fraud chargeable to it.

■■■ It is obvious that in this case one of two innocent persons must suffer because of a wrongful act of a third. It is the well-known rule of law that where two or more innocent people must suffer because of the wrongful acts of a third, the one who has placed the third person in the position to perpetrate the wrong must suffer. State of Iowa v. Corning Sav. Bank, 139 Iowa 338, 115 N. W. 937; Benton County Sav. Bank v. First Nat. Bank, 161 Iowa 712, 140 N. W. 811.

It may be that defendant bank might have ascertained the reason for the execution of this check to the defendant by inquiry from plaintiff or her attorney. The check, however, was perfectly regular on its face, was executed to the bank as payee, and as such was received by the bank as cash. Bank checks are too commonly used in these days of modern business to require a bank, to whom an ordinary check is presented, to do more than to inquire *from the drawee bank* whether or not the maker has sufficient funds therein to meet the check. There being nothing in the appearance of the check to indicate any irregularity therein, it is our finding that the defendant bank was not guilty of any negligence in failing to ascertain the purpose of the check.

For the reasons hereinabove expressed, the evidence of fraud was not admissible, and the ruling of the lower court in sustaining the objections thereto was proper.

The judgment of the lower court must be, and it is, therefore, hereby affirmed.—Affirmed.

All Justices concur in opinion.

RICHARDS, C. J., concurs in conclusion.