**Ralph J. SMITH and Ella M. Smith, Plaintiffs-Appellants,**

v.

**Donald R. PETERSON and Evelyn Peterson, Defendants-Appellees.**

**Donald R. PETERSON and Evelyn Peterson, Cross-Petitioners-Appellees,**

v.

**Franklin D. LaFRATTE, d/b/a Franke LaFratte Realty, Third-Party Defendants-Appellants.**

**No. 2–61857.**

Court of Appeals of Iowa.

June 28, 1979.

Review by Supreme Court Denied Aug. 9, 1979.

Joel W. Bittner, Des Moines, for plaintiffs-appellants.

Marc S. Harding, Des Moines, for third-party defendants-appellants.

Lawrence E. Myers, Des Moines, for defendants-appellees, cross-petitioners-appellees.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

SNELL, Judge.

Plaintiffs, Ralph and Ella Smith, and third party defendant, Franke LaFratte Realty, appeal from a judgment against them and in favor of defendants, Donald and Evelyn Peterson. The Petersons had purchased Sis' Lounge from the Smiths through LaFratte Realty. The trial court found that the Smiths and LaFratte Realty had failed to inform the Petersons that the

State intended to condemn a portion of land on which the lounge was located in order to widen the highway running in front of the lounge and that, as a result of the widening, direct access from the highway to the lounge would be lost. The court also found that the Smiths attempted to obtain a condemnation award of $6700 for themselves at a condemnation hearing held after Petersons had made an offer to buy subject to receiving financing which the Smiths had accepted. Smiths failed to inform the Department of Transportation of this transaction. The court concluded that both the Smiths and LaFratte Realty had breached an absolute duty to disclose material facts about a property not readily observable upon reasonable inspection, that the Petersons' rescission of the contract of sale was proper and that the Petersons should receive restitution of their down payment against the Smiths and LaFratte Realty. The court also concluded that the Smiths acted with legal malice and awarded $2000 in punitive damages to the Petersons. We affirm the trial court.

I. Before reaching the merits of the parties' arguments, we will dispose of the procedural matter raised by the appellants. The Smiths originally instituted this action in equity to enjoin the Petersons from selling the business assets to satisfy a claimed security interest in the property. The Petersons counterclaimed, stating that the Smiths and LaFratte Realty had materially misrepresented certain facts to them in the sale of the business and that they, consequently, were entitled to revoke the contract and receive restitution of their down payment. The Smiths were granted a temporary injunction and were subsequently placed back into possession of the business. The Smiths also claimed that the Petersons failed to mitigate damages. The Smiths further moved to transfer the matter to the law docket. The court refused, stating that the equitable issue of rescission remained in the case.

The Iowa Supreme Court has stated: "Rescission," as used in connection with the cancellation or termination of contracts, has two connotations. A contract may be rescinded by the acts of one of the parties and does not require court action except such action at law as may be necessary to restore the status quo. . . . Rescission may also be effected by a suit in equity seeking to have a court declare a rescission and restore the status quo. The methods are analogous, but not the same. Both are governed by equitable principles.

*Binkholder v. Carpenter*, 260 Iowa 1297, 1302, 152 N.W.2d 593, 596 (1967). Here the Petersons employed both methods of rescission. The first method, rescission *in pais*, was accomplished when the Petersons sent notice to the Smiths, repudiating the contract and offering to restore the status quo. *Id.* at 1303, 152 N.W.2d at 597. The second method was accomplished when the Petersons counterclaimed, asking the court in equity to declare a rescission and restore the status quo. *Id.*

Technically rescission of the contract took place when the Petersons notified the Smiths of their repudiation and offered to restore the status quo. *Id.* At that point, the Petersons had a remedy at law for seeking recovery of their down payment. *Id.* at 1303–04, 152 N.W.2d at 596. Nonetheless, the Petersons in their counterclaim pursued a remedy in equity. Generally equity will not take jurisdiction to declare a rescission where a party has an adequate and complete remedy at law. *Id.* at 1304, 152 N.W.2d at 596. But here, Petersons did not initiate a separate action to recover their down payment; rather, they were party defendants in an action properly filed in equity by the plaintiffs. "Where an action is properly brought in equity, . . . the court will retain jurisdiction and determine the legal issues presented." *Grandon v. Ellingson*, 259 Iowa 514, 518, 144 N.W.2d 898, 901 (1966). Furthermore, as stated above, rescission is governed by equitable principles. Consequently, the trial court's ruling denying plaintiffs' motion to move the case to the law docket should stand.

Our review is de novo. Iowa R.App.P. 4. We give weight to the findings of the trial court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7).

II. Appellants, Smiths and LaFratte Realty, recognize that in Iowa a seller is required to reveal to the buyer material facts known to him but not readily observable upon reasonable inspection by the buyer concerning the property which is the subject of the sale. *Loghry v. Capel*, 257 Iowa 285, 289, 132 N.W.2d 417, 419 (1965). But appellants maintain that this rule is inapplicable to them under the particular circumstances of this case. They claim that the subject matter of the sale was the business, not the real property, and thus possible condemnation of land affecting access to the property was collateral, not material, to the sale of the business. We cannot agree with appellants' interpretation.

■ To recover in equity on the ground of fraudulent misrepresentation, the alleged fraud must be material. *Rosenberg v. Mississippi Valley Construction Co.*, 252 Iowa 483, 486, 106 N.W.2d 78, 80 (1961). A fact is material if it substantially affects the interest of the party alleged to have been defrauded. *Wilden Clinic, Inc. v. City of Des Moines*, 229 N.W.2d 286, 292 (Iowa 1975). Materiality has been found where a fact influences a person to enter into a transaction, where it deceives him or induces him to act, or where the transaction would not have occurred without it. *Wilden Clinic*, 229 N.W.2d at 286; *First National Bank in Lenox v. Brown*, 181 N.W.2d 178, 182 (Iowa 1970); *Rosenberg*, 252 Iowa at 486, 106 N.W.2d at 80.

■ Here, Donald Peterson's testimony shows that he would not have entered into the transaction if he had known of the condemnation proceedings. We find, as the trial court did, that his testimony is credible. We further believe that continued patronage by customers is of material concern to operators of restaurant-lounge type of businesses. Change of access from a main highway to a service road could significantly affect the volume of business. Ralph Smith, himself, stated that he expected to suffer a loss of approximately $7000 due to the condemnation and loss of access from the main highway. Condemnation by the State of property in front of the lounge was a material fact which should have been made known to the Petersons. Testimony by the Petersons that the condemnation proceedings did not influence their decision to close the lounge is not important. The important point is that the Petersons entered into a transaction they otherwise would not have entered into because of the appellants' failure to disclose the pendency of condemnation proceedings.

■ But the appellants also maintain that they had informed the Petersons of the State's intention to widen the road, that road widening activities were already taking place within a mile of the lounge, and that alteration of the highway was common knowledge in that area. They point out that Evelyn Peterson admitted that Ralph Smith had mentioned the road widening project. Thus, they claim that the fact of condemnation and loss of access was a matter readily discoverable by the Petersons upon reasonable inspection in that the Petersons had notice of road widening activities, placing upon them the responsibility of further inquiry to learn of plans which might affect the business.

> The Iowa Supreme Court has stated:
> It is the duty of every person, in transacting business, to use ordinary care and prudence. If false representations are made regarding matters of fact, and the means of knowledge is equally open to both parties, and then one party, instead of informing himself, sees fit to put himself in the hands of the other, whose intent is to mislead him, the law will give him no remedy for his injury.

*McGibbons v. Wilder*, 78 Iowa 531, 535, 43 N.W. 520, 522 (1889); *see also Wead v. Ganzhorn*, 216 Iowa 478, 480, 249 N.W. 271, 272 (1933); *Bean v. Bickley*, 187 Iowa 689, 706, 174 N.W. 675, 682 (1919). On the other hand, when distinct representations have been made, the other party has a right to

rely on them without further inquiry even though circumstances are present which might raise inconsistent inferences. *McGibbons*, 78 Iowa at 535, 43 N.W. at 522. Furthermore, where one party inferentially induces another party to forego further investigation, and the other party relies on the first party's representations, the defrauded party's claim is not barred because he failed to use due diligence to discover the true facts. *First National Bank in Lenox*, 181 N.W.2d at 183; *see also Riley v. Bell*, 120 Iowa 618, 626–27, 95 N.W. 170, 172 (1903). Likewise, a party's responsibility to investigate is influenced by whether the information is equally available to both parties, *see Wead v. Ganzhorn*, 216 Iowa at 480, 249 N.W. at 272, or whether facts are peculiarly within the knowledge of the one against whom the claim of fraud is made. *First National Bank in Lenox*, 181 N.W.2d at 183.

In this case, while the Petersons did have some knowledge concerning the widening of the road, the facts of loss of access from the main highway and condemnation proceedings from which a condemnation award was to be made were within the peculiar knowledge of the Smiths and LaFratte Realty. Under the circumstances in this case, where the Petersons were not highly educated and noticeably inexperienced in business transactions, we cannot say that the Smiths' brief statement concerning the road widening project placed upon the Petersons a duty to determine whether access to the lounge would be lost and a condemnation award would be made. Rather, it seems clear to us that the Petersons relied on the sellers and their agent to impart information material to the sale of the business. Furthermore, the statement by Ralph Smith that the road was to be widened and later a statement by LaFratte's agent, Marlys Wilson, that there was nothing to worry about, could have justifiably caused the Petersons to believe that they had been told all there was to know about the project. The Petersons were not required to make further inquiry.

III. Appellants claim, though, that the trial court erred in finding them liable of actionable fraud in that the seller has a duty to disclose only those facts which involve dangerous or defective conditions, in that statements of value cannot serve as the basis of fraudulent misrepresentation, and in that the Petersons did not rely upon representations made or information not provided by sellers or their agent in entering the transaction. We disagree.

While to establish fraud in law actions, it is necessary to prove 1) representation, 2) falsity, 3) materiality, 4) scienter, 5) intent to deceive, 6) reliance, and 7) resulting injury or damage, equity may grant relief absent a showing of scienter or pecuniary damages. *Wilden Clinic*, 229 N.W.2d at 292; *First National Bank in Lenox*, 181 N.W.2d at 181. In equity, fraud may be shown from surrounding circumstances. *Id.* Plaintiff carries the burden of establishing fraud by a preponderance of evidence which is clear, satisfactory and convincing. *Wilden Clinic*, 229 N.W.2d at 292.

We note that a real estate agent who knowingly makes false statements may be held personally liable for such statements. *Riley v. Bell*, 120 Iowa at 622–24, 95 N.W. at 171. "[A]ny person who by himself perpetrates a fraud, or who makes himself a party with others to the commission of a fraud, may be held personally liable for the natural consequences . . . flowing therefrom." *Id.* at 624, 95 N.W. at 171–72.

Appellants' assertion that fraud can be charged only where facts not disclosed involved defective or dangerous conditions is without merit. The test is whether the facts not disclosed were material to the transaction.

Furthermore, appellants' claim that fraud may not be charged when facts involve issues of valuation only is not completely accurate. When a seller quotes a price and says that this price represents the value of the thing being sold, this statement of price may be deemed an opinion which cannot serve as the basis for a claim of fraud. *Bosley v. Monahan*, 137 Iowa 650,

654, 112 N.W. 1102, 1103 (1908). This is not to say that all material information which also affects price or value may not serve as the basis for a claim of fraud. In this case, the loss of access from the main highway would affect the value of the business. Statements made by Ralph Smith concerning damage he expected to suffer from the condemnation were introduced to show that the loss of access would materially affect the value of the business. Condemnation and loss of access were material facts which could serve as the basis of this fraud action.

■ Appellants claim that the Petersons did not rely and had no right to rely on sellers or their agent to obtain information concerning the condemnation and loss of access. They assert that Donald Peterson's statement that he would not have purchased the business if he had known of the condemnation is not sufficient proof that he was improperly induced to enter into this transaction. Our examination of the circumstances reveal otherwise. As noted above, the Petersons, not highly educated and inexperienced in business matters, did rely upon sellers and their agent to provide necessary information concerning the business. They entered this contract based upon the information provided. We find Donald Peterson's direct testimony that he would not have entered the transaction if he had known of the condemnation credible. Under such circumstances, it is permissible to infer inducement and reliance. *Loghry*, 257 Iowa at 292, 132 N.W.2d at 421.

■ Furthermore, the Petersons were justified in expecting that the Smiths and LaFratte Realty would inform them of important matters relative to the lounge's business capabilities. It is true that ordinarily mere silence in an arms-length transaction does not serve to create actionable fraud. *Wilden Clinic*, 229 N.W.2d at 293; *First National Bank in Lenox*, 181 N.W.2d at 183. This is not the case, though, where one party has superior knowledge of the facts, resulting in an inequality of condition or knowledge between the parties. *Wilden Clinic*, 229 N.W.2d at 293; *First National Bank in Lenox*, 181 N.W.2d at 184. The

party with the superior knowledge then has the duty to disclose those material facts which may be favorable to him and unfavorable to the other party. *Id.* The Smiths and LaFratte Realty had superior knowledge of a material fact, namely that the widening of the road would result in loss of access to the lounge from the highway and in a condemnation award to the Smiths. It was their duty to reveal this fact. Neither did. Consequently both parties are liable in fraud for material misrepresentation.

The fact that the Petersons decided to close the business for reasons other than the misrepresentation made to them is not important in determining if an action for fraud will lie. The Petersons' right to rescind the contract derives from the fraud inducing them to enter into the transaction and is not affected by their decision to cease business operations.

■ IV. Appellants maintain that because the Petersons failed to make their initial payment due to the Smiths, they cannot, under the "clean hands" doctrine, recover in equity. The failure to make a payment is, in this case, a separate issue from the issue of whether the Petersons have a right to rescind the contract because of the fraudulent misrepresentations of appellants. Recovery to Petersons cannot be denied on this ground.

■ V. Finally appellants contend that the award of punitive damages against the Smiths is unjustified. When a party acts with legal malice, an award of punitive damages is appropriate. *McCarthy v. J. P. Cullen & Son Corp.*, 199 N.W.2d 362, 369 (Iowa 1972). "Legal malice may be established by showing wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights . . . or . . . the intentional commission of a wrongful act without just cause or excuse." *Id.* Punitive damages are awarded to punish the offender and to deter others from committing similar wrongs. *Young v. City of Des Moines*, 262 N.W.2d 612, 621 (Iowa 1978).

The award in this case was justified. Not only did the Smiths fail to disclose the material facts of loss of access and condemnation to the Petersons, but, at a condemnation hearing held after the Smiths had accepted the Petersons offer to buy the Smiths failed to inform the hearing panel of this fact. The condemnation award, which is in the process of appeal, was made to the Smiths. This is further evidence of the Smiths' intent to deceive the Petersons as well as strong proof that the Smiths acted with a willful disregard for the rights of the Petersons.

For all the reasons stated above, the trial court's decision is affirmed.

AFFIRMED.